Good morning. We're here for the embankment argument in Frost v. Van Boening. Council ready? Okay. We'll hear from our appellant. May it please the Court. Eric Levin for Petitioner Joshua Frost. I'd like to reserve five minutes for rebuttal. At the prosecutor's request, the trial court ordered Mr. Frost's counsel to concede guilt beyond a reasonable doubt in order to present his duress defense. This decision denied Mr. Frost his right to present his defense theory in summation, and it deprived him of the most fundamental and deeply rooted right in our adversarial system of justice, the accused's right to participate fully and fairly in the trial by presenting proper arguments to the jury. For this reason, it was structural error. Instead of applying Herring's governing legal principle, as the Supreme Court has taught in Thaler, the respondent argues that Herring means only that the accused has a right to present a summation without regard to what that summation is. That's really not the question before us, is it, whether it's structural error or not. The question is whether the state court was unreasonable in concluding it wasn't. We may all, every single one of us, may agree that it's structural error and yet could find that the state was not unreasonable in concluding otherwise, right? In cases such as Richter... I just make sure we have the right question in front of us. That is certainly correct, but I do want to point out that the Supreme Court in Yarborough v. Alvarado did discuss the range of what a reasonable judgment is when the rule is specific. The court acknowledged that the range is narrow. This is a case in which the principle... When is the last time the Supreme Court recognized something as being structural error? In a habeas context or uncorrected? Never at all. Well, I mean, you know, there's only a limited number. And what is it? They're a few... I would have thought if they ever did it, it would be in that case. I believe they said no. It's a limited list. We don't... I don't think it's been 10, 15, 20 years since they've recognized anyone. It's been seven years. Gonzales-Lopez was structural error, the denial of counsel of choice. That's the last one that I know of. However, even though the list of structural errors is a narrow one, the error that occurred here fits within, the Herring error fits within that rubric in four particular ways. Is that really the case? I want to focus, as the Chief had, on the EBFA issue. I agree with you that there was constitutional error. I absolutely agree with you. And the Washington Supreme Court did, too. The problem was that they didn't think it was structural error when you looked at Herring. And under Herrington v. Richter, the only way that we can overturn what was done there is if we assume that there are no fair-minded jurists that could possibly disagree with the Washington Supreme Court. Isn't that the standard we look at? The standard is the reasonable jurist. That is correct. And whether it is unreasonable to find it. Let me explain to you why it would be unreasonable for this court to find a Herring error to not be structural. First of all, if we go back to the very principle of Herring, the very principle of Herring is that partisan advocacy is the premise of our adversary system and that the Sixth Amendment guarantees the accused the right to participate fully and fairly. But in that case, he was denied any right to participate. That's correct. That was a limited right. Absolutely correct. That is the facts of what occurred to Mr. Herring. However, it is not the principle of Herring. The principle of Herring was broader. The Supreme Court in Herring didn't simply say that the accused has a right to present a summation. What the Supreme Court said is that the accused has a right to present a proper summation. And the court has no discretion to deny that right. But again, focusing on ADPA, that's not what the Washington Supreme Court said. If I recall correctly, they nine times referred to the fact that there was no total denial. Rather, this was a limited restriction and that they were basing their decision on that fact. Isn't that correct? This was a total denial of a defense theory. And when the Supreme Court in Herring talked about the right to make a summation, it was talking about proper arguments, all proper arguments. If you look at footnote 8 in Herring, you will see that the court cites to 26 state cases for the proposition that it is universally recognized that the counsel for the defense has a right to make a closing summation. Those cases. I want to sort of have you focus a little bit on that. Compare summation, you know, closing arguments to, say, cross-examination. I think you probably would not disagree that a court has a right to somehow control the proceedings, correct? I mean, you can limit cross-examination if you properly do it. You could, let's say if someone's arguing five days and you're saying, okay, you know, I'm hearing a lot of repetition, you know, can you wrap it up or, you know, whatever. So, you know, people can't just do anything. Then you have the fact that argument is not evidence and the jury is instructed of that. So if you can limit cross-examination and subject that to some sort of harmless error, why can't you limit cross-examination and subject that to some, when it's not even evidence? And the jury, in my understanding in this case, did get the proper jury instructions. They were still read that the prosecution had the burden of proof and all of that. So you're kind of asking us to go on this slippery slope. I understand what you're saying. The court in Herring did recognize that a judge has discretion to limit the duration of a closing argument. But it also recognized that the court had no discretion to deny the defendant the opportunity to present proper arguments. And so if you, again, look at footnote 8 and look at the kinds of cases that the Supreme Court was looking at in finding this right to summation, you will see that only four of those 26 involved a complete preclusion of summation. Another four involved a limitation of the scope of summation. In other words, a proper argument was completely precluded, but another proper argument was allowed. In those cases, it was reversed as error, without a harmless error analysis. What are those four cases, counsel? I have to go to my footnotes. Those cases are State v. Gilbert, State v. Vary, Lynch v. State, and State v. Shadoody, all contained within footnote 8 of Herring. In addition, 15 of those cases involved time limitations. And although the court recognized that you can limit, the court has discretion to limit duration to avoid waste of time, once that limitation crosses the line and denies the defendant the opportunity to make proper arguments, to participate fully and fairly, it is reversible error. Those phrases, fully and fairly and proper argument, comes from those cases in footnote 8. And it comes from 400 years of development of law from the 16th century on about the meaning of the adversary system. If it's reversible error, is it structural error? Well, these cases were preincorporation. They are State court cases. But I would say this, that all of them talk about the right being so fundamental that it doesn't even need discussion. And they reverse it without an analysis of whether it was harmful or not. They reversed it without discussion. Given the fact that, assume for my question that there was no structural error, and we're now looking at the harmless error aspect of the case, given the fact that the defense lawyer in his opening statement to the jury conceded that his client had committed some of the crimes, his client got on the witness stand and admitted to participating in most of the offenses, and the defense lawyer actually addressed during closing the fact that the jury could find him guilty of some of these crimes, but then he urged them not to find him guilty of the firearms offenses and the crime in which he had not actually been present during the robbery, why is it error for the Washington Supreme Court to conclude that the limitation here was harmless? Well, let me just make clear that I disagree with the premise of some of how you encaptured the closing, the summation. Is that correct? Counsel, is that the correct argument under AEDPA? You would be arguing that it was perhaps an unreasonable application of law to the facts for the court to consider the error harmless? The standard under AEDPA would be the Bruck standard, substantial and injurious effect. We are not contesting the Washington Supreme Court's finding of fact as an unreasonable fact under 2254D2, but as the court pointed out, there was a basis for these arguments to be made, particularly with respect to knowledge. Each one of these crimes was a separate crime. This was not a conspiracy. There was no Pinkerton liability, and the state bore the burden of proving beyond a reasonable doubt each and every element of each offense. But the problem he has is that he has, in order to pursue a duress defense, he has to concede that he actually engaged in the acts. Otherwise, there's no duress to present, right? I disagree, and this was the error that the trial court made. The law says that a duress defense is an affirmative defense, but it does not require the defendant to concede guilt as the trial court ordered the defendant to do. I'm not saying concede guilt. I'm saying he has to admit that he actually engaged in acts and that he did so under duress. But it is not necessarily antagonistic to say I was not fully aware, I did not have knowledge with respect, or rather the state did not prove beyond a reasonable doubt that I had the requisite knowledge to make me criminally liable as an accessory to these crimes. And the only reason I was with these individuals because of threat of force on my mother and my brother. But isn't that what the defense lawyer argued in closing? No, he did not. That there wasn't enough evidence to link him, for example, to the firearms offenses? They were not firearms offenses. Enhancements. They were enhancements. Yes. He was forced to concede criminal liability with respect to each and every criminal act. And his request for the jury to find him not guilty of the firearms enhancements was nothing more than a plea for mercy. He acknowledged they could find him liable and said please don't, but made no argument of law and fact as Herring gave him the right to do. Well, what additional argument would he have made beyond what he said? I mean, he's admitted in an opening statement that his client engaged in some of these offenses and his client testified to them in front of the jurors. As I said, regardless, and Herring points this out, regardless of how strong the evidence is, the defendant has an inalienable right to present a closing argument and require. What additional argument would he have offered, assuming it is a structural error? Well, if we are not, if you are not finding it structural error, then I would at least point out that in terms of substantial injurious effect, the Court should not disregard the fact that after gaining an advantage to which he was not entitled, the prosecutor then took advantage of forced silence. Counsel, I'd like you to answer Judge Tolman's question, though, which was if he had been permitted to do whatever he wished in his closing, what would he have said? We don't know. And they didn't know in Herring either, and it didn't matter to Herring. But that assumes structural error. And my hypothesis is, assuming there is not structural error, why was it objectively unreasonable for the Washington Supreme Court to conclude that notwithstanding the constitutional error, on this record it was harmless? I think it was unreasonable for them not to consider the prosecutor's use of the defense lawyer's silence as an admission of his client's guilt, that that did not have a substantial injurious effect. That was unreasonable. But I would point out this, that in conjunction, and since the Court wants me to address the Napoo and Brady violation, Brecht was very clear that when there is a pattern of prosecutorial misconduct, that there are certain areas of errors that defy the Brecht analysis. And this would be one of them, because of the confluence of the Brady and Napoo violations in conjunction with the undue preclusion of a legitimate defense theory. But since you're saying we don't know what he would have said, I mean, don't you at least need to give us some plausible argument that he could have made that would, because it's like, you don't have a right to make, you know, it's, I'm sorry, it's, I come to, there can be stupid arguments that you can make, and then we want to find that you didn't get to make a stupid argument, structural error, too? The plausible argument is that he did not have the requisite knowledge of the particular crime. Washington law is very particular in the kind of knowledge you have. But he got duress instructions, right? There's no instructional error, so there were duress instructions. Right. So the instructions were correct. The jury was told that you have to find each and every element beyond a reasonable doubt, and that I am assuming that they were told statements of counsel are not evidence. You look to the evidence, and you are the final, you make the final decision. What could have been said that would have made a difference? Well, let me just back up and point out that in Herring, of course, we had a bench trial, a finder of fact in law that is presumed to be applying the appropriate law, and it did not matter in that case. The court still found it to be a violation of in re winship to deny the advocacy, because advocacy is so deeply rooted in our adversarial system of justice, that partisan advocacy. And the arguments he could have made were that they had failed to prove beyond a reasonable doubt that he had the requisite knowledge that is required under Washington state law, beyond a reasonable doubt. Remember, Herring said how the jury evaluates the evidence is the province of the jury. But before that can happen, the defendant has the opportunity, the right to present his theory to the jury. Mr. Levin, let me ask you. There's a statement by the Washington Supreme Court after they recognized the due process error, the Herring error. And they observed that the trial court lessened the state's burden to some degree to prove the elements of accomplice liability. How does that fit into the analysis here? Well, that is very much a part of the decision in Herring. Herring cites the in re winship. You don't have a Herring error without some error affecting the burden. If you look at, so if you look, there's nothing in Herring at the very end discussing harmlessness or structural error. That's correct. That's correct. But if we look at the court's later decisions, like in Fullamonte and Nieder and whatnot, and we're told to look at the framework and the overall structure of the trial, why isn't this statement by the court combined with the court's, you know, with the Washington Supreme Court's outright conclusion that there was Herring error here, why doesn't this all just go to the framework of the overall trial? I think that's right. And my point is that the court understood Herring error to be total preclusion of any proper argument, not total preclusion of summation. And once you have precluded that, the court found it to be structural error. And it fits within structural error in four respects. It is an error that aborts a basic trial process. There is nothing more essential to a criminal trial than the right to partisan advocacy. That's what the court found in Herring. It affects the trial framework under Arizona v. Fullamonte, because as the court in Herring said, no aspect could be more important than that opportunity to finally marshal the evidence. It also defies assessment of the harm. Remember, the court in Herring said there is no way to know whether unmade arguments in summation might have affected the ultimate judgment. How is this any different from Fullamonte in that respect? These things are always difficult to figure out what would have been, but how is this, if Fullamonte is not structural error, how can you assess that one any better than this one? Right, let me respond. That is the fourth respect in which it is a structural error. You said there is no way to assess the effect of the error. And I'm not sure you said you can't do it, but why can't you do it? You could do it in Fullamonte. Why can't you do it here? I did not say that. That was the court in Herring that said that. But let me explain why it's different. No, no, I'm sorry. I thought you were applying it to this case. You're saying this case. I'm saying that Herring – well, remember, the court in Herring had the record. This was a bench trial. They wouldn't have been invading the province of the jury to make determinations of fact. Chapman had occurred seven years before Herring. So they had a constitutional harmless error standard in play, and they declined to apply it. Why? Because this fits – the answer to that question is found in Strickland v. Washington. In Strickland v. Washington, the court said certain kinds of Sixth Amendment violations are presumed But you don't have a Sixth Amendment claim here. This is a Sixth Amendment claim. You don't have a Winship – you don't have a – you don't have a denial of right to counsel claim. You don't have a Winship claim here. It might be a different case if you had a Winship claim. I mean, and I think some pretty good argument could be made that this is a Winship error. It's possible you could have had a claim that this is a denial of the right to counsel. That is our claim. That is – and that's what Herring was – Herring was a Sixth Amendment right to counsel case. And what they said is when you deny the accused through counsel the right to make a proper argument, it is reversible error. It is structural error and it is a denial of counsel. That's the holding of Herring. That's our claim as well as a Winship claim. Well, but I thought that your claim here said the denial of the right to counsel would be that the lawyer was required to concede guilt. He was required to concede guilt. He was not permitted to make any argument that the State had not proved guilt beyond a reasonable doubt. That's what the error is here. And Strickland v. Washington found that in certain Sixth Amendment – But that was not part of Herring. There was no such requirement in Herring. In Herring they just said you can't argue. And here you've got the additional element that he can't contest guilt. Right. And that strikes me as just a different constitutional problem than not being able to make an argument. I'm not sure it's one that you have preserved. No, that is our claim. And let me explain why that is a Herring claim. It's a Herring claim because when Herring said you had a right to make summation, what it said, what it meant, and what it said was you had a right to make a proper argument. And if they deny you the opportunity to make a proper argument, you are denied your Sixth Amendment right to counsel because you've been denied the right to fully and fairly participate in the trial, and it is per se reversible. It's structural error. But let me answer the other part of your question, which is isn't this just a lesser violation, right? And the fact is the actual government part of my question was do you have a Winship claim here? Yes. We made a Winship claim. It is part of our habeas petition. But I would point out that Herring relies on Winship. It says when you deny someone the opportunity to make their proper argument, it is also a Winship violation because it lessens the burden on the prosecution. You've removed the partisan advocacy. It's a, you know, and that's why the error here was worse than, you know, if we're asking whether the error here is materially indistinguishable from Herring and the ways in which it was different was worse than what happened in Herring because in Herring both sides were precluded from making summation. Here it was a unilateral denial. It wasn't a denial of both the prosecution and the defense. Counsel, do you concede, let me back up. Obviously your argument is this is structural. We understand that. But if we find, if we find that Herring, as applied to this case, does not when filtered through ADPA result in structural error, you concede that your client loses in a harmless error analysis. I do not. I believe that when in his rebuttal summation the prosecutor started out by pointing to the silence of the defense lawyer on the issue of guilt and saying this is an acknowledgment that the arguments are phony, he turned the defense lawyer into a witness for the prosecution. And even the person who was assigned to represent Mr. Frost at trial became a witness for the prosecution as a result of the limitations. There are a lot of other witnesses, too, whether or not the Washington Supreme Court elucidated a lot of that. There was just overwhelming evidence of your client's guilt. I understand your point about the structural error. I get that. But if we find because of ADPA that it's not structural error, don't you have a fatal problem as far as your client's guilt is concerned? Well, the question is whether it had a substantial and injurious effect, and I believe it did. Well, he confessed three times to committing, and the jury heard all those confessions. That's right. There was evidence. I'm not saying that we're contesting the finding of fact made by the Washington Supreme Court. And all the incriminating evidence that was found in the search of his safe, including guns and ski masks. But what was also clear was that he was not a decision maker. He was a follower. He was not kept in the loop about decisions being made, and often things were spur of the moment when decisions were made by others. And so there was a question as to when requisite knowledge was there. He was not charged in accessory after the fact. He actually went into one of the home invasions, did he not? And that is the one that in opening statement the defense lawyer says, I think you can find him guilty. Guilty. That's what he says. But the ones that the Washington Supreme Court are talking about are every other charged offense. In light of all that evidence, why is it objectively unreasonable for the Washington Supreme Court to conclude that even if there was error, it was harmless? It's wrong because of the nature of the kind of error it was. It defies harmless error analysis. And I would like to touch on this, which is that in Strickland v. Washington, the Supreme Court noted that certain kinds of errors defy harmless error analysis. Prejudice is presumed. And those kinds of errors are errors where the prosecution is responsible for them, and that is exactly this kind of error. In fact, Herring v. New York cites the two of those types of errors, Brooks v. Tennessee and Ferguson v. Georgia. Those are cases where the client was not denied counsel in total, but was denied the guiding hand of counsel in terms of how to, when and how to present his testimony at trial. The court in Herring cited those cases for the proposition that there can be no restriction upon the function of counsel in defending a criminal case within the tradition of our adversarial system of justice. This was such a restriction on the defendant's counsel. Let me try a question I asked you earlier one more time in a somewhat different direction. Let's say I'm not persuaded by your Herring argument. We'll just assume that. But I think there may be a Winship error here, which is structural if it's a Winship error. So is the record exhausted as to Winship error? Was Winship error presented to the state courts? Is it properly before us? Yes, that's correct. It was. It is properly before the court. Persuade me. We claimed it. We claimed it as a separate claim. You claimed it as a separate claim, and you claimed it in district court as a separate claim? Yes, that's correct. That's correct. We claimed it below. I didn't see it in the questions presented here. Help me out here. I think the reason that we didn't separate them within the petition for rehearing on bank is because they are so interrelated. Are they in your rule brief? Yes. As a separate claim? Yes. Yes, that's correct. Okay. And it was presented to the district court. But the premise is the same. Well, I understand the premise. You may think the premise is the same. But it is a separate constitutional error. It is a separate constitutional error. But, of course, the court in Herring relied on Winship as part of its error. Okay. You've got three and a half minutes or so left. Thank you. Do you want to save it for rebuttal? Yes. We'll hear from the State. May it please the Court, John Sampson, Assistant Attorney General for the Respondent-Appellee. The Supreme Court in Herring v. New York held that the total denial of closing argument is structural error. He was denying closing argument as to the issue of reasonable doubt. He was told by the judge he had to select the defense he wanted to pursue in closing argument. He could either argue the defense. I'm sorry. Is that a yes or no? Oh, I see. I'm sorry. So he could argue one or the other. So if he wanted to argue duress, he couldn't argue reasonable doubt. Why is that just a denial of the right to make closing argument as to one issue? It is a restriction on the scope of closing argument. Well, but that's sort of one way of phrasing it. Why can't you phrase it just as easily as a total denial of argument on one issue presented in the case rather than a partial denial on everything? Because, Your Honor, it's not what Herring says. If you're talking about it was a total denial of if he chose to pursue a defense of duress, he cannot then argue lack of proof of accomplice liability because the judge would withdraw the instructions on defense. Well, but isn't it just sort of a stupid argument? But can't people just make stupid arguments? I mean, a lot of times, like, someone says, well, I wasn't there, but if I was there, I'm not guilty of first-degree murder. I'm guilty of second-degree murder. And if you wouldn't let someone argue something like that, I mean, I think that would be error. You know, why did the prosecutor even object? If it's a stupid error, just let him make a stupid argument. And then when you get back up, say, well, either he was there or he wasn't there. And if he was there, then look at this. Yes, Your Honor. And it would be the same as arguing. That was the DA's office. You're the Attorney General, right? That's correct, Your Honor. But that's a very good question. And we see that question a lot of the time. Why did the prosecutor bother with this anyway? And I agree. I don't know why the prosecutor did raise this issue. I was not there at trial. I don't know what was occurring. I agree. It would be an inconsistent argument. I don't think it would be persuasive to the jury. The State Supreme Court said this was error. But then the question is, is this harmless error or trial error? No, but we're not there yet. Because if you consider this to be a total denial of argument on an issue in the case, on one aspect of the case, then it's hearing error. We don't have to deal with harmlessness. And that's what I was trying to get you to focus on. Why do you want to characterize this as a restriction argument? Rather, why isn't the more correct way of saying is, look, there were two separate issues, essentially two separate cases presented. It's sort of like saying, you know, the defendant is charged with two crimes, and you can have your choice counsel. You can argue against one crime or you can make an argument on one crime, or you can make an argument on the other crime. You can't argue both. Wouldn't that be viewed as the total denial of all argument of summation on one aspect of the case? The Supreme Court may someday say that is, but they have not yet. Well, no, I'm asking you today. If you had, if somebody was charged with two robberies, people get convicted, often get tried for two separate robberies. Okay? And the trial judge said, look, counsel, you can have summation. You can have reasonable amount of time, hour, you know, as long as you want, within a reasonable amount of time, but you can only argue one of the robberies. You know, you take your pick. You can argue robbery that happened on July 1st, or you can argue the robbery that happened July 2nd. Would you characterize that as a restriction argument, or would it be a total denial of argument? As a restriction argument, it is not. You would consider that to be a restriction? Yes, Your Honor. Doesn't that prove way too much? Isn't that sort of a concession? I mean, surely if there are two separate crimes, and you said you can argue one crime, but you can't argue the other crime, or you can argue one or the other, you think that would be a restriction, not a denial? To be clear, what I'm saying is not what Herring held. What Herring held was an argument. Why wouldn't that be an unreasonable application of Herring, the hypothetical case I'm now talking to you about? Because Herring involved the complete denial of any summation whatsoever. But hasn't the Supreme Court said that we don't have to have an identical set of facts, and wouldn't the Herring principle apply to Judge Kuczynski's, Chief Judge Kuczynski's hypothetical? No, Your Honor, because this is not simply a distinguishing factual situation. This is the extension of the rule in Herring that you cannot completely deny any closing argument to, okay, you have a closing argument, but the judge has restricted it in certain ways. Is that constitutional error that is structural error? Even when the restriction says you can't talk about this other crime at all, this other crime which could have been tried as a separate crime on a separate day before a separate jury, you can't say a thing about it. I mean, you can say you can talk about one crime, you can talk about another crime, but not about both. And you would say that that is not a denial, that's a restriction. What I was saying is that's not the holding of Herring. You're not going to get me on that one. So if it's an extension of the Herring rule, then you have to look at was that a creation of a new rule that was not dictated by prior precedent, or was it unreasonable? So why don't you do that for me? Yes, Your Honor. So what would you say if that were the case? If you're dealing with two separate crimes, complete denial, you can pick your crime that you can argue, but what would you say? Would that be an extension? It would be an extension, Your Honor. How would it come out? How would it come out being? How is it an extension? No, no, no. I mean, you would say it's an extension, and therefore it would not be a violation, it would not be unreasonable. It would not be unreasonable for the State Supreme Court to do what they did here and say the application of Herring to a situation where counsel did argue to the jury and did present his main defense and the jury was properly instructed on reasonable doubt, that the Supreme Court ---- No, no, I'm still talking about my hypothetical, but you can talk about one crime but not the other crime, and you think that would be okay, that would be permissible for the State court to hold? I think a State court could determine that it's not structural error because Herring is a limited holding to the absolute denial of any closing argument, and a State court could reasonably determine that where the judge allows argument on one count but not on another, that that was not structural error. The court may find it to be error but not structural error. And that's one of the big distinctions between what petitioners relying on Herring for and what we're saying Herring stands for. He cites, too, a quote of a Maryland case where the Supreme Court, quoting that Maryland court, said that there is a right to have a proper argument on the evidence and the applicable law. That Maryland case dealt with the total denial of any closing argument. So the court said that ---- What if the court said you can argue anything you want for ten seconds? Would that be a restriction? That would be a closer case to Herring because what can you actually say in ten seconds? How much closer? I would say much closer because what can you really say in ten seconds? One person asked me, well, what if it was three seconds? I think three seconds would probably be a total denial because you really can't say anything more than your name in three seconds. But ---- Ten seconds wouldn't? I think, Your Honor, so the question then becomes where is the line that we draw? And because there is this big dispute about where is this line, fair-minded jurists can disagree as to whether it applies. And I would point to ---- I think a fair-minded jurist could say ten seconds is okay. Your Honor, I think that most jurists would say ten seconds is not enough. Well, how about a fair-minded jurist? And I think fair-minded jurists as well. But what I'm ---- first of all, that's not our case. What would Justice Sanders say? I'm sorry, Your Honor? What would Justice Sanders say? Justice Sanders would find this to be structural error. There we go. Counsel, may I ask just a different question? Didn't the Washington State Supreme Court also find this to be Winship error? Your Honor, they found it to be a Winship error to the extent that it infringed on the ---- the Court found it to be lowering the prosecution's burden of proof. Right. Especially in light of the requirements of the Washington State law that uniquely Washington State law that the State was required to prove beyond a reasonable doubt that Frost participated in each of his accomplices' criminal acts with adequate knowledge of promotion or facilitation. And they themselves say this argument is best illustrated by the robberies in which Frost was only a driver and remained in the car. So as to that, those crimes that ---- with which Frost was charged, the Washington State Supreme Court held that the prosecutor's obligation under the Constitution to prove each element of the offense beyond a reasonable doubt was lessened. That's Winship error. So my question is, well, isn't that structural error? And didn't the Supreme Court of Washington unreasonably apply Winship by not holding structural error based on its finding that there was Winship error? No, Your Honor. And the reason is, is because just because something is quote-unquote a Winship error doesn't mean it's structural error. The Supreme Court in Nieder v. United States and in Washington v. Requenco held that even though you have an error that reduces the prosecution's burden in Nieder, it was the omission of an element of the offense which reduced the burden to prove that element. Or in Requenco, it was the denial of a jury trial proving beyond a reasonable doubt the elements that increased the sentence. But this goes to mens re. This goes to, like, the key element of the crime. But the Supreme Court has still indicated that those are trial-type errors, the omission of an element that violates. Winship itself dealt with what is the proper burden of proof for a juvenile adjudication. Is it preponderance of the evidence, or is it beyond a reasonable doubt? There's no claim here that the jury was improperly instructed on the burden of proof. This is not a Sullivan error, which would be a structural error if the instruction on beyond a reasonable doubt was unconstitutionally invalid. But functionally, wasn't it the same? What happened here effectively reversed the burden of proof, didn't it? The trial judge says, not only am I not going to let you talk about this, but you have to admit the elements of the crime before you can talk about duress. And duress is an affirmative defense, and the burden is on the defense to prove that by preponderance of the evidence. So why didn't this amount to, in practice, a flipping of the burden of proof? I have two answers to that, Your Honor. First, I disagree that the trial judge said, you have to admit the elements of the crime. Well, let me quote you on page 126. You cannot argue to the jury that the State hasn't proven accomplished liability in claim of duress. You must opt for one or the other. You must admit the elements of the offense have been proved before you can use the duress offense. And right before that, on page, excerpt to record 34 to 35, counsel asked, is the court telling me I have to explain to the jury that we admit all the elements of all the offenses charged? And the judge said no. No, he said no to the extent, and then they go on, and then he says, you must admit the elements of the offense have been proved before you can use the duress defense. And what the judge was saying is, if you start talking about lack of proof as the liability, I'm going to pull back the duress defense instructions. So you have to choose. But he didn't say, you have to get up and admit that your client is guilty of everything, and then claim duress. Because what the Washington Supreme Court said is, yes, and this is at excerpts to record 52 to 53, if you assert a defense of duress, you admit that you committed the acts. You don't admit liability, but you admit you committed the acts. No, I get that. But I think in practice what happens is he doesn't argue. He basically concedes a bunch of the offenses. He doesn't argue. He follows the court's instruction. He doesn't argue that there's no reasonable doubt. He doesn't talk about the concept of reasonable doubt. And then he presents his duress defense, which is his burden. And then the prosecutor gets up and says, you see, he admitted everything. So, I mean, in effect, I mean, why isn't that a reversal in practice of the burden of proof? Well, Your Honor, again, looking at the opening statements, counsel admitted that Mr. Frost was guilty of the Gap robberies and that he would be guilty of most of the crimes. He just would not be guilty of everything. And to answer your second part of my answer to your question is, this is more like Nieder versus United States or Washington versus Requenco, where, yes, there was a lowering of the burden of proof, or in Requenco, the jury never found any of the elements beyond a reasonable doubt because it wasn't even presented to them. That is a harmless error. That is a trial error involving the presentation of the case to the jury. It is not a structural error that involves the entire framework of the trial and vitiates all the jury's findings. It goes to, did the jury possibly not find an element as to one of the offenses charged? That's a trial error. And that's why, even though you call it a Winship error, it's really not a claim that falls directly under Winship. It falls under the progeny that later applies Winship in different areas. And what we have here is a Herring claim, but Herring involved the absolute denial of any closing argument. The question then becomes, how does Herring apply where there is argument, but it's restricted in some manner? Whether it's a time restriction, whether it's you can only argue one of the counts and not both counts, or whether you have to choose your defense. And that's an issue that's been left open by the Supreme Court. And that's an issue that this Court has recognized has been left open. Well, would you concede, though, if even, okay, you're saying that Herring doesn't cover when you can only argue one of the crimes. But would you say that someone would have a much stronger prejudicial error argument as opposed to saying it was harmless if they didn't get to say anything about one of the crimes? Oh, yes, Your Honor. So you're saying that's where you would factor it in as opposed as saying that Herring controls? I would say, yes, it would go more to the harmlessness. But I would also say that the Supreme Court may someday say, if you let them argue on one count but not on the other, that is a structural error. The Supreme Court may someday say that, but they haven't said it yet. And because they haven't said it yet, the State Court's decision here was not an unreasonable application of clearly established federal law. Because the Court has Herring, which says it's a structural error if there's no argument whatsoever. What if the judge had said, you actually have to stand up and admit the elements of the crime if you want to argue the rest? If you had said, you know, there's a condition of arguing the rest, you have to stand up and tell the jury that you admit. Would that be a structural error? No, Your Honor. And again, it would be a trial error going to the presentation of the case to the jury. It would not be a structural error, and it's certainly not a case that the Supreme Court had reached a holding on. All of this discussion today involves how does Herring apply, or does it even apply? And as the Supreme Court recently stated in, I think it's Chydez, it's the case involving whether the Padilla requirement that counsel advise a defendant on the collateral consequence of deportation prior to a guilty plea, whether that created a new rule. And the Supreme Court in the Chydez case said, yes, it created a new rule. We weren't simply applying Strickland. We were first deciding, does Strickland even apply here in the first place? And then, if so, how does it apply? And so that was itself a new rule. The Supreme Court has recognized that when you take a holding of the court and then stretch it to a new situation, that constitutes a new rule that is not clearly established. And that's what Petitioner is asking this Court to do. Are you really saying, though, in this case that it's constitutionally permissible for a trial judge to require a defendant to admit guilt before proceeding with any affirmative defense? Like, self-defense, this is harassment. That's constitutionally permissible. I'm not going to let you put on a self-defense theory unless you concede the elements of the crime. What I'm saying, Your Honor, and I apologize if I went beyond what my point is, is that under the lens of AEDPA, it is not clearly established that it is structural error. Okay, so are you saying that under AEDPA lens, that it's constitutionally permissible for a state court to say, you have to admit the elements of the crime before you can put on an affirmative defense? I think that that itself remains somewhat of an open question. What affirmative defense? First of all, a defendant has no constitutional right to an affirmative defense. They have no right to, the court said in Gilmore v. Taylor, the denial of a constitutional magnitude. So if the state wanted to say, yes, you can pursue a defense of self-defense, but you have to admit that you would be guilty otherwise absent self-defense, whether or not a state could do that, I don't think the Supreme Court has ever said. So you think it's permissible under AEDPA? Under AEDPA, it would not be an unreasonable application of Supreme Court precedent, and therefore, relief is barred. Again, the issue is not what does the Constitution require, what would this court believe, what would the Supreme Court someday believe? The question is, under currently existing holdings of the Supreme Court, was it unreasonable for the state court to reach the decision it reached here? And I would say no, and this court's decisions in United States v. McGill indicates that. This court found a structural error in a situation similar to this in McGill, citing that such an error is structural and requires reversal under our precedent. And then they said under this circuit's case law, this is structural error requiring reversal. And then Judge Reimer, in her dissent, said she recognized essentially there was no error requiring reversal. The court did not preclude closing argument entirely, citing to Haring. So Judge Reimer indicated that Haring didn't cover this type of situation because Haring involved the absolute denial of any closing argument. Mr. Sampson, we've asked you a lot of questions using the term elements, which, as I understand, the term means that he essentially admits there is proof beyond a reasonable doubt not only of the elements of the crime but also the mens rea that is required to convict. I read the Washington Supreme Court's decision as trying to very carefully tread that if you're going to invoke the defense of duress, then you must concede that you have committed the acts but not necessarily that you are agreeing that you are criminally liable because if you successfully establish duress by a preponderance, you have established a legal excuse for the commission of those acts. That is correct, Your Honor. That is correct. And that's not the same thing as admitting to the elements of the crime, is it? That is correct. That is correct. And what happened here was in his own... I'm sorry. Why isn't it the same as admitting to some of the elements of the crime? Because, Your Honor, in his trial testimony... Let me back up. Mr. Frost was charged as an accomplice. To be guilty as an accomplice, all you have to do is knowingly aid or assist in the specific particular degree of the crime but just the crime in general. So you knowingly participate or aid in the participation of the crime of robbery, regardless of degree. He, in his testimony at trial, said he knew he was driving them to the location to commit a robbery. He knew they were armed. He knew they were going to commit the crime of robbery. That admission in his trial testimony was all the prosecutor needed to prove guilt as an accomplice. Then the question becomes, is there a defense that avoids criminal liability? And his defense, which he was... I'm not following your question. Why isn't admitting to the physical facts admitting an element of the crime? It's not enough. It's not all the elements, but why is it that element? Because it's the act of... To the extent that the act is an element, yes, the act becomes the element. But the act was knowingly driving... Okay. I'm sorry. What is it about it? Why isn't that true? I mean, to the extent that... It sounds like such a lawyer's answer. Well, part of proving the case, the prosecutor's case, is proving that he was physically present and did something. He also has to prove a mental element, knowledge, and all those things. And why isn't the sort of physical proof an element of the crime? And why isn't the answer to Judge Stallman's question the opposite of what you just answered? It's not enough. It's not all the elements, but it certainly makes the life a lot easier for the prosecution if the grubby facts are out of the way, isn't it? Your Honor, so in other words, the defense has to admit that he engaged in the acts. And what he did at trial was he admitted he drove to the robbery. He drove these people so they could go commit the robbery. The mens rea element is, did he do it with knowledge? But there is a difference between admitting it and having it established beyond a reasonable doubt. People admit all sorts of things in all sorts of ways. They give confessions that turn out to be false or divest or, you know, all sorts of things. But there's a difference between saying there's proof even coming out of his own mouth that he was there and saying this is something that is established beyond a reasonable doubt. That's establishing an element. Why isn't that exactly what happened here? He had to sort of concede that this was established beyond a reasonable doubt. Well, he did not have to concede beyond a reasonable doubt. And he never told, I don't think he ever told the jury, we concede that he's guilty of all the crimes. He actually was able to argue a lack of proof. But I think I asked you the question, and I think you remember, I said what if he had been actually asked, the lawyer had been required to admit, stand up and admit. He said that wouldn't be structural error either. And it would not. So we have to sort of treat this case as if the lawyer had stood up and said, ladies and gentlemen of the jury, I'm going to argue the rest. But first of all, I want to let you know for sure that the prosecution has established beyond a reasonable doubt that my client was there, drove the car, did all of these things. All the physical aspects of the case have been established beyond a reasonable doubt. You would say that's not structural error, right? Yes, Your Honor. It's not under clearly established federal law. So I don't understand your answer to Judge Tolman. Because what... To Judge Tolman's question. What we were talking about with Judge Tolman's question is, my understanding is, what does Washington law require for a presentation of a defense of duress? And Washington law requires that the defendant admit the act. Not necessarily criminal liability. Because you can admit all the acts, including all the mens rea. But then you say, I only did that. I only knowingly aided in the commission because I was afraid for my safety or the safety of my mother or the safety of my brother. And that's why I committed those acts. So you're admitting all the acts, you're admitting all the elements of the crime, but you're not conceding criminal liability. Okay, so you can be required to admit elements of the crime, is the answer to what I thought was Judge Tolman's question. But you've got only a little bit of time left. Let me ask you this. Why shouldn't we certify the uncertified questions? And, you know, we will, of course, if we decide to do this, we will let both sides argue this in briefs and all that. But just give me a quick answer. Why is this not... It seems the kind of questions are just on their face and without argument. They seem the kind of questions that jurists of reason could disagree about. Why shouldn't we certify them? Because, Your Honor, I think for two points, the cause and the prejudice. The state court found that this evidence that was allegedly not disclosed was available in a public court record two days after the conviction. And that's how it was found by the defense eventually. They went to the court record and found it. This district court... You don't think jurists of reason can disagree as to whether or not having something published in an obscure document or, you know, someplace in a database, whether that vitiates the government's duty under Brady and NAPU? I think... No, Your Honor, I'm not... Do you have a case that makes that sort of beyond the scope of what jurists of reason might disagree about? No, Your Honor. We're not talking about the merits of the Brady and NAPU. We're talking about procedural bar and whether he can show cause for failure to... cause to overcome the procedural bar. Well, counsel, wasn't Frost imprisoned in pro se until after the expiration of the post-conviction relief petition? And had the government provided the second plea agreement in a timely way, then he would have had it and he wouldn't have been at that disability to obtain it. Well, Your Honor, as this court has recognized, the fact that he's a pro se prisoner is an internal circumstance, not an external circumstance. He would not possibly have access to the document. And if the government did, in fact, withhold that document and put on testimony by Shaw knowing that testimony where he perjured himself, he knew he had entered into a dual agreement and he knew he was getting a lessened penalty for the second crime, and yet he testified at the trial that there was only the one agreement and that there were no other benefits. And the government at the time knew that they were giving him benefits for another separate crime. Well, Your Honor, that all goes to the merits of the claim. The question is then, did Mr. Frost exercise due diligence or was he prevented some way as to establish cause for his failure to present... So isn't that reasonably debatable, given the fact that the government withheld even filing of that plea agreement until after he was already convicted? Well, two days after. So it was available on a public court record for over a year after he was convicted. When did he begin sending letters to the DA's office? When did that correspondence start? That started in 2008, Your Honor. That after the one year or after the limitations period? No. He actually first started, I believe, he first started sending those letters during the state time bar period. So he was still within the one year. He was still within the time, right? He was still within the time, and he indicated that he was aware that Mr. Shaw had received some favorable treatment, and so he was asking for documents. So why didn't the DA's just give him everything they had? What's to hide at that point? Well, they were attempting. I disagree with Mr. Frost's position that they were trying to hide the ball at that point. The communication actually shows the public records officer was trying to help him find exactly what he was looking for and was saying, okay, we've located documents in this file. But even earlier, didn't counsel during the trial request documents as to any and all records of any benefits being given to Mr. Shaw in exchange for his testimony? Yes, Your Honor, and that goes to the merits of the claim, not to whether there's a procedural bar and whether there's costs. But if we assume costs, what about the prejudice prong? And the prejudice is the other reason he cannot succeed. He has to show actual prejudice, and Mr. Shaw was actually a very small part of this case in light of all the evidence found in Mr. Frost's house, in light of his three confessions, in light of his own trial testimony. He cannot show actual prejudice because what we're talking about is an additional piece of impeachment. The jury knew that he was testifying in exchange for favorable treatment as to a drug charge and a gun charge. This was just another deal as to domestic violence. This day would ask that the Court affirm the district court's judgment. Thank you. Thank you. We have some time left on the clock. You can have it all. In fact, we'll make it four full minutes. How's that? You're in a generous mood. They just call me Mr. Generous here. I did want to take issue just with the uncertified issue for a moment, which is that the cause and prejudice, the Court has found that the cause and prejudice analysis mirrors the elements of the Brady and the Pooh claim, and so they can be considered together. And here the cause is not only that a specific request was made in writing to the prosecutor for these documents, a specific conversation was had, and a document was produced during the trial at a time in which that was itself false. The document that the prosecutor produced to the defense lawyer indicated there was only one benefit for the gun and drug case. It did not mention anything about the DV case, even though within the file we discovered, subsequent to the time in which to file the state post-conviction claim, that within that file was contained the true plea agreement, which indicated that this was a package deal and that it connected with the domestic violence case, which itself was a violent felony offense, not merely a domestic violence offense. So what's your response to the question about prejudice? The prejudice is that what is important is that Shaw was an important witness for the state. He was an important witness because of his testimony, which did not appear anywhere within his interviews with the police prior to the DV assault in the second degree, that Mr. Frost was laughing and giggling when he discovered him with the other individuals who were ultimately his co-defendants. This was something that the prosecutor used with great effect in his summation to undermine the duress defense. He said in his summation, which is in ER Excerpt of Record 182, 183, when Mr. Shaw talked to the defendant about his involvement, the defendant was giggling. Does that sound like duress? He didn't say he needed help. He didn't deny it. He didn't sound serious about it. He was laughing. He was laughing. And if you're under a duress, you're scared, et cetera. But he was laughing. Well, when he confessed to the police three times, did he ever mention duress? Yes. Certainly there was an argument that the state advanced. Where specifically? I'm sorry? Where specifically? My recollection is that certainly within the third time that he spoke to the police, he did mention fear for his brother and his mother. His mother also testified, as did his aunt, that during this time period he had called them with concerns about their safety. So there was some evidence to the record that this was at play during the time of the offense conduct. But, of course, Mr. Shaw came in with his testimony and the prosecutor used it to undermine that. With respect to where Inouye Winship appears in the appellate briefs, if you look at page 21 to 23 of the opening brief, as well as page 9. I know it was cited. I was just wondering whether there is a freestanding Winship argument to the claim. Yes. They were combined. Well, limited to issues raised in district court, claims raised in district court, claims raised before the state courts. And the answer is yes. It was raised. The notion that Haring only ensures the defendant a right to make a summation and that perhaps even 10 seconds would be sufficient is actually the position of the dissent in Haring. And the majority in Haring completely rejected this and held that the right was the right to make a proper argument. And that has been, subsequent to Haring, the universal understanding of Haring. And so if you look at cases within this circuit, if you look at state Supreme Court cases, all of them are identical in their approach, which is that you have a fundamental right to present your theory of the case and that failure to do that is per se reversible structural error. And so there is no dispute about that. Even the cases that the respondent cites to Bramble, Bautista, Davis, and Bowersox don't undermine this. They simply define the other side of that, that a judge does have discretion to limit the duration or avoid arguments that have no basis or are a waste of time or confusing to the jury. But that's not what this was. This was a legitimate argument. Thank you very much. The case of Hill-Arger will stand submitted. We are adjourned.
judges: Kozinski, Reinhardt, Thomas, Wardlaw, Paez, Tallman, Rawlinson, Bybee, Callahan, Smith, Nguyen